**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STERLING SITE ACCESS SOLUTIONS, LLC, an Illinois limited liability company,<br><br>               Plaintiff,<br><br>vs.<br><br>INTERNATIONAL BEAMS, LLC, a Florida limited liability company,<br><br>               Defendant. | Civil Action No. 1:19-cv-04325<br><br>Hon. John Blakey<br><br><br>**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, VIOLATION OF THE DEFEND TRADE SECRETS ACT, AND VIOLATION OF THE ILLINOIS TRADE SECRETS ACT** |

## FIRST AMENDED COMPLAINT

Plaintiff Sterling Site Access Solutions, LLC, by and through its undersigned counsel, for its First Amended Complaint ("Complaint") against Defendant International Beams, LLC, states as follows:

### PARTIES

1.  Plaintiff Sterling Site Access Solutions, LLC ("Sterling"), is an Illinois limited liability company located in Phoenix, Illinois. Before January 1, 2019, Sterling's name was Sterling Lumber Company, LLC. Sterling Lumber Company, LLC, changed its name to Sterling Site Access Solutions, LLC, as of January 1, 2019.

2.  On information and belief, Defendant International Beams, LLC ("Defendant") is a Florida limited liability company with its corporate headquarters located in Sarasota, Florida, and factories located in Alabama and Canada.

### JURISDICTION AND VENUE

3.  This Court has jurisdiction over the subject matter of this action pursuant to 18 U.S.C. § 1836(c) as to Sterling's federal trade secret claim. This Court has supplemental jurisdiction over

Sterling's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy.

4. This Court has personal jurisdiction over Defendant because Defendant consented to such jurisdiction when it entered into an agreement with Sterling in Phoenix, Illinois that establishes the state and federal courts of Cook County, Illinois as the exclusive forum for resolution of disputes concerning the agreement. This Court also has personal jurisdiction over Defendant because Defendant's actions giving rise to this Complaint took place in this district.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant transacts business within this district, and it is where a substantial part of the events giving rise to the claim occurred.

## FACTUAL BACKGROUND

6. Sterling delivers a full range of customizable ground protection solutions, including innovative cross-laminated timber ("CLT") mats for heavy equipment and machinery that are lightweight, durable, and recyclable. Sterling's CLT mats are used in, or intended for use in, interstate or foreign commerce.

7. Sterling has invested years of time, energy, and engineering effort into creating the innovative design and automated manufacturing process for its CLT mats and in procuring sensitive customer and competitor information and marketing know-how.

8. Sterling diligently protects the foregoing trade secrets through nondisclosure agreements with third parties, restrictive covenants in its employment contracts, limiting access to information, and other safeguards.

9. Defendant manufactures construction materials, including joists to facilitate the construction of roofs and flooring.

10. One of Sterling's vendors introduced Sterling's president to Defendant's president. Defendant was interested in building CLT panels to augment its structural lumber business and approached Sterling under the false premise of entering into a business relationship.

11. In or around June 2017, Sterling invited Defendant's president, Bruno Lebel, and then Director of Engineering, David Catta, to tour Sterling's facilities. Sterling does not allow third parties to tour its facilities or access its confidential information without first entering into a nondisclosure agreement.

12. On or about June 21, 2017, prior to Defendant's tour of Sterling's facilities, Mr. Lebel and Mr. Catta executed a nondisclosure agreement on behalf of Defendant ("Nondisclosure Agreement"). Defendant entered into the Nondisclosure Agreement with Sterling when Sterling's name was Sterling Lumber Company LLC.

13. The Nondisclosure Agreement restricts Defendant's use of Sterling's Confidential Information other than to use the Confidential Information in connection with a potential business relationship between Sterling and Defendant.

14. The Nondisclosure Agreement defines Confidential Information in Paragraph 1 as follows:

> "**Confidential Information**" means all information, documents, agreements, files and other materials obtained from or disclosed by or on behalf of Sterling Lumber, including, without limitation, technical and non-technical information, data, records, computer programs, software, inventions, discoveries, designs, promotional ideas, customer information, customer lists, financial information, practices, processes, methods, techniques, trade secrets (including, without limitation, certain unique methods, techniques and processes relating to manufacturing, product designs, product attributes and adhesive applications), products, prospects, plans,

marketing and sales programs, research and development information, information related to possible mergers, acquisitions and other corporate transactions, information about suppliers or joint venture partners or the terms of any agreement between the Parties or between/among other parties and the discussions, negotiations and proposals related to any such information or the Relationship, as well as any other information that (a) is of a confidential nature or (b) would reasonably be considered as confidential, in each case whether disclosed orally or in writing and regardless of when it was disclosed (including prior to the date of this Agreement) and the form in which it is stored. "Confidential Information" shall be deemed to include all notes, analyses, compilations and other material prepared by or on behalf of Recipient or any Representative (as defined below) thereof containing or based in whole or in part on any Confidential Information.

15. Confidential Information includes, but is not limited to, the trade secrets described in paragraph 7 above.

16. The Nondisclosure Agreement further specifies at Paragraph 11 that:

Recipient acknowledges and agrees that irreparable harm may occur if any Confidential Information were to be disclosed to third parties or if any use were to be made of the Confidential Information other than that specified in this Agreement, and Recipient further agrees that Sterling Lumber shall have the right to seek and obtain injunctive relief upon any violation or threatened violation of the terms of this Agreement, without having to post any bond or security or prove actual damages, and that such right shall be in addition to, and not in lieu of, any other rights and remedies available at law or in equity (including, without limitation, monetary damages).

17. The Nondisclosure Agreement establishes that the exclusive jurisdiction and venue for any dispute concerning the agreement shall lie in the state and federal courts of Cook County, Illinois. (Nondisclosure Agreement ¶ 14.)

18. Under the Nondisclosure Agreement, Sterling is entitled to recover its reasonable attorneys' fees and costs "arising out of or resulting from any disclosure or use by [Defendant] or its Representatives of Confidential Information in breach of this Agreement or any other breach of

this Agreement by [Defendant] or its Representatives, including any related litigation commenced to enforce any provision of this Agreement."  (Nondisclosure Agreement ¶ 10.)

19. On June 28, 2017, Mr. Lebel and Mr. Catta toured Sterling's facilities.  During that tour, they were provided with Confidential Information including but not limited to, proprietary manufacturing techniques, product drawings and specifications, sensitive customer and competitor information, and marketing know-how, all of which relate to Sterling's CLT mats.

20. Defendant knew that the Confidential Information provided by Sterling was secret because it executed the Nondisclosure Agreement in order to obtain access to that very information.

21. Sterling has discovered that Defendant improperly used and disclosed Sterling's Confidential Information to others, including but not limited to Defendant's manufacturers, despite Defendant's duty to maintain secrecy.  The Confidential Information disclosed by Sterling was and is clearly valuable: Sterling spent years of time and effort to develop the design of and automated manufacturing process for its CLT mats, and Defendant repeatedly acknowledged the value of the information and its eagerness to obtain it from Sterling.

22. Out of empathy to a fledgling start-up company, Sterling continued to follow up with Defendant and offered Defendant a license to allow it to commercially manufacture CLT mats. Sterling also offered a supply agreement to Defendant, wherein Sterling would purchase all of Defendant's CLT panels manufactured to Sterling's specifications for a period of 18 months, after which time Defendant could sell its CLT panels to anyone.  Defendant refused these offers and continued to use the improperly disclosed Confidential Information, without permission and to Sterling's detriment.

23. Defendant's actions have harmed Sterling, and Defendant has been unjustly enriched through its unauthorized use of Sterling's trade secrets and breach of the Nondisclosure Agreement.

## COUNT I – BREACH OF CONTRACT

24. Sterling restates the allegations contained in paragraphs 1 through 23 of this Complaint as if fully set forth herein.

25. The Nondisclosure Agreement is a valid and enforceable contract between Sterling and Defendant.

26. Defendant breached the Nondisclosure Agreement when it used Sterling's Confidential Information for its own benefit and without Sterling's authorization.  Among other things, Defendant used Sterling's Confidential Information to manufacture a product almost identical to Sterling's CLT mats and sell that product to customers and competitors of Sterling.

27. Sterling has performed all of its obligations under the Nondisclosure Agreement.

28. As a result of Defendant's breach of the Nondisclosure Agreement, Sterling has been damaged in an amount to be determined at trial.

WHEREFORE, Sterling respectfully requests that this Court enter judgment in favor of Sterling and against Defendant on Count I of this Complaint for an amount to be determined at trial, attorneys' fees and costs, prejudgment interest, and any further relief that this Court deems just and proper.

## COUNT II – VIOLATION OF THE DEFEND TRADE SECRETS ACT ("DTSA")

## (18 U.S.C. §§ 1836 *et seq.*)

29. Sterling restates the allegations contained in paragraphs 1 through 28 of this Complaint as if fully set forth herein.

30. The federal Defend Trade Secrets Act defines a "trade secret" as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing" if "(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

31. Under the DTSA, a person misappropriates a trade secret by, among other things, disclosing or using the trade secret without express or implied consent when, at the time of the disclosure or use, the person knew that knowledge of the trade secret was "acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret" or was "derived from or through a person who owed a duty . . . to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5)(B)(ii)(II) and (III).

32. Sterling has invested significant financial and other resources in its design and automated manufacture of its CLT mats as well as its Confidential Information. Sterling diligently protects these investments through nondisclosure agreements with third parties, restrictive covenants in its employment contracts, limiting access to information, and other safeguards to maintain the confidentiality of its trade secrets and confidential business information.

33. Sterling's manufacturing facility in Phoenix, Illinois is a tightly secured building into which third parties are not granted access without express authorization. Anyone entering the facility must have a badge, and all entrances and exits are logged. Any non-employee who tours Sterling's facility is required to enter into a nondisclosure agreement. Moreover, Sterling's employees are required to enter into confidentiality agreements as a condition of employment.

34. Sterling's Confidential Information has independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

35. As set forth above, Defendant's President Bruno Lebel and Defendant's then Director of Engineering, David Catta, entered into the Nondisclosure Agreement with Sterling prior to touring Sterling's manufacturing facility on June 28, 2017. The Nondisclosure Agreement imposes a duty on Defendant to maintain the secrecy and limit the use of Sterling's Confidential Information, and it prohibits Defendant's unauthorized use or disclosure of Sterling's Confidential Information.

36. Despite the foregoing, Defendant has made substantial unauthorized use and disclosure of Sterling's trade secrets, which Defendant acquired under circumstances giving rise to a duty to maintain their secrecy and limit their use. Among other things, Defendant has used Sterling's trade secrets to manufacture a product almost identical to Sterling's CLT mats and sell that product to customers and competitors of Sterling.

37. As set forth above, Sterling took affirmative measures to keep its confidential and proprietary information secret.

38. Sterling has no adequate remedy at law to protect against the misappropriation and unauthorized use of its trade secrets by Defendant. Injunctive relief is therefore necessary and appropriate to restrain the misappropriation and unauthorized use of such trade secrets and confidential information pursuant to the DTSA.

39. Unless Defendant is restrained and enjoined from using Sterling's trade secrets and confidential information, Sterling will suffer immediate and irreparable injury in that Defendant will continue to have access and the ability to make use of the trade secrets and confidential information.

40. As a direct and proximate result of Defendant's actual and threatened misappropriation of Sterling's trade secrets and confidential information, Sterling has suffered damages in an amount yet to be determined. Additionally, Defendant has been unjustly enriched. Pursuant to 18 U.S.C. § 1836(b)(3)(B), Sterling is entitled to recover monetary damages.

41. Pursuant to 18 U.S.C. § 1836(b)(3)(C) and (D), Defendant's misappropriation of Sterling's trade secrets is willful and malicious, and therefore Sterling is entitled to an award of exemplary damages from Defendant of two (2) times the monetary damages awarded under 18 U.S.C. § 1836(b)(3)(B) as well as reasonable attorneys' fees.

WHEREFORE, Sterling respectfully requests that this Court enter judgment in favor of Sterling and against Defendant on Count II of this Complaint for (1) an injunction prohibiting Defendant from using or disclosing, or threatening to use or disclose, Sterling's trade secrets; (2) monetary damages in an amount to be determined at trial pursuant to 18 U.S.C. § 1836(b)(3)(B); (3) exemplary damages and attorneys' fees and costs pursuant to 18 U.S.C. § 1836(b)(3)(C) and (D); and (4) any further relief that this Court deems just and proper.

## COUNT III – VIOLATION OF THE ILLINOIS TRADE SECRETS ACT ("ITSA")

## (765 ILCS 1065)

42. Sterling restates the allegations contained in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43. The Illinois Trade Secrets Act defines a "trade secret" as information "including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers" that "(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS 1065/2(d).

44. Under the ITSA, a person misappropriates a trade secret by, among other things, disclosing or using the trade secret without express or implied consent when, at the time of the disclosure or use, the person knew that knowledge of the trade secret was "acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use" or was "derived from or through a person who owed a duty . . . to maintain its secrecy or limit its use." 765 ILCS 1065/2(b)(2)(B)(II) and (III).

45. The ITSA authorizes injunctive and other relief to remedy "actual or threatened misappropriation" of trade secrets. 765 ILCS 1065/3(a).

46. As set forth above, Sterling took affirmative measures to keep its confidential and proprietary information secret.

47. Sterling has no adequate remedy at law to protect against Defendant's misappropriation and unauthorized use of Sterling's trade secrets and confidential information. Injunctive relief is

therefore necessary and appropriate to restrain the misappropriation and unauthorized use of such trade secrets and confidential information.

48. Unless Defendant is restrained and enjoined from using Sterling's trade secrets and confidential information, Sterling will suffer immediate and irreparable injury in that Defendant will continue to have access to, and the ability to make use of, Sterling's trade secrets and confidential information.

49. As a direct and proximate result of Defendant's actual and threatened misappropriation of Sterling's trade secrets and confidential information, Sterling has suffered damages in an amount yet to be determined and Defendant has been unjustly enriched. Sterling is entitled to recover monetary damages under 765 ILCS 1065/4(a).

50. As Defendant's acts were willful and malicious, Sterling is further entitled to an award of exemplary damages from Defendant pursuant to 765 ILCS 1065/4(b) in addition to reasonable attorneys' fees pursuant to 765 ILCS 1065/5.

WHEREFORE, Sterling respectfully requests that this Court enter judgment in favor of Sterling and against Defendant on Count III of this Complaint for (1) an injunction prohibiting Defendant from using or disclosing, or threatening to use or disclose, Sterling's trade secrets; (2) monetary damages in an amount to be determined at trial pursuant to 765 ILCS 1065/4(a); (3) exemplary damages and attorneys' fees and costs pursuant to 765 ILCS 1065/4(b) and 1065/5; and (4) any further relief that this Court deems just and proper.

Dated:  September 11, 2019

Respectfully submitted,

STERLING SITE ACCESS
SOLUTIONS, LLC

By: ___*/s/ Athanasios Papadopoulos*___

    Athanasios Papadopoulos (#6278188)
    LATHROP GAGE LLP
    155 North Wacker Drive, Suite 3000
    Chicago, IL 60606
    Telephone:  312.920.3355
    Telecopier:  312.920.3301
    Email:  tpapadopoulos@lathropgage.com

    Attorneys for Plaintiff
    Sterling Site Access Solutions, LLC

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned, an attorney, hereby deposes and states that he caused the foregoing **First Amended Complaint** to be filed with the Clerk of the U.S. District Court on September 11, 2019, and served on all parties via the CM/ECF system, pursuant to Local Rule 5.9.

         _/s/ Athanasios Papadopoulos_
         Athanasios Papadopoulos